IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

R.R.R.,[1]

Petitioner,

v.

JUAN HERNANDEZ, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); DAVID VENTURELLA, Acting Director of Immigration and Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, Attorney General of the United States,

Respondents.

Civ. No. 3:26-cv-01410-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Petition for Writ of Habeas Corpus, ECF No 1. Respondents have filed a Return, ECF No. 11, and Petitioner has filed a Reply, ECF No. 13. For the reasons set forth below, the Petition is DENIED.

[1] Petitioner filed both the Petition, ECF No. 1, and the Motion for Temporary Restraining Order, ECF No. 4, using his full name. In their Return, Respondents omitted Petitioner's full name because he is seeking asylum. ECF No. 11. Petitioner followed suit in his Reply. ECF No. 13. The Court will refer to Petitioner as "R.R.R." in an abundance of caution.

## BACKGROUND

Petitioner is forty-eight years old and is a citizen of Mexico. Pet. ¶ 14. Petitioner and his wife initially entered the United States in 2002. *Id.* ¶ 30. In 2011, Petitioner and his family returned to Mexico. *Id.* On November 21, 2014, Petitioner applied for admission into the United States at the San Ysidro, California port of entry. Resp. Decl. ¶ 3.[2] ECF No. 12. Petitioner was determined to lack valid entry documents and was detained. *Id.*

On December 11, 2014, after a credible fear determination, Petitioner was issued a Notice to Appear ("NTA"), "charging removability under INA § 212(a)(7)(A)(i)(I) for removal proceedings in Immigration Court." Resp. Decl. ¶ 4. Petitioner was released on bond on February 2, 2025. *Id.* ¶ 5. Since his release, Petitioner has complied with all the conditions and requirements of his release and has attended every immigration court hearing. Pet. ¶ 32. Petitioner has never been arrested, charged, or convicted of a crime. *Id.* ¶ 34.

In 2019, Petitioner submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture Act. Pet. ¶ 35. On May 1, 2019, Petitioner's request for asylum was denied and Petitioner was ordered removed to Mexico by an Immigration Judge ("IJ") in Portland, Oregon. Resp. Decl.

[2] The identity of Respondents' Declarant has been redacted from the docket filings, with no objection from Petitioner. The Declarant represents that they are "an Acting Supervisory Detention & Deportation Officer ('SDDO') employed by the U.S. Department of Homeland Security ('DHS'), U.S. Immigration and Customs Enforcement ('ICE'), Enforcement and Removal Operations ('ERO')" and is "currently assigned to the ERO Portland Field Office in Portland, Oregon." Resp. Decl. ¶ 1. Petitioner has, apparently, been provided with an unredacted copy of the Declaration and is satisfied that the Declarant is who they say they are. The Court has not been supplied with an unredacted version of the Declaration.

¶ 6, Ex. 1. Petitioner's request for withholding of removal was denied. Resp. Decl. Ex. 1.

On May 16, 2019, Petitioner appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). Resp. Decl. ¶ 7.

On April 26, 2022, the BIA dismissed Petitioner's appeal, making the IJ's removal order administratively final. Resp. Decl. ¶ 8; Pet. ¶ 36.

On September 30, 2024, ICE canceled Petitioner's bond and placed him on an Order of Supervision ("OSUP"). Resp. Decl. ¶ 9, Ex. 2.

On February 25, 2026, Petitioner filed a motion to reopen immigration proceedings with the BIA, asserting changed conditions in the country of removal. DHS has filed an opposition to the motion and that motion is pending before the BIA. Resp. Decl. ¶ 10; Pet. ¶ 37.

On July 16, 2026, Petitioner filed a motion for a stay of removal with the BIA. DHS has filed a response in opposition to the motion and the BIA has not issued a stay of removal. Resp. Decl. ¶ 11.

Petitioner is currently under the supervision of the Intensive Supervision Appearance Program ("ISAP") and wears a GPS ankle monitor at Respondents' direction. Pet. ¶ 33. Petitioner asserts that his Order of Release on Recognizance was revoked at midnight on June 26, 2026, and that Respondents attempted to take Petitioner into custody at his residence on June 27, 2026. *Id.* ¶ 4. Respondents assert that Petitioner's OSUP has not yet been revoked. *See* Resp. Decl. ¶ 13 (stating that "if" ICE revokes the OSUP, it will follow the statutes and regulations in providing

Petitioner with all required process). Petitioner has not submitted any declarations or exhibits and stands on the allegations of the Petition.

Petitioner filed the pending Petition for Writ of Habeas Corpus on July 10, 2026, asserting his belief that Respondents might seek to detain and remove Petitioner at his July 17, 2026, appointment at the Portland ICE office. Pet. ¶ 39. Petitioner was not detained at that appointment. At the time of this Opinion & Order, Petitioner has not been taken into physical custody.

**LEGAL STANDARD**

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v, Rodriguez*, 411 U.S. 475, 484, 489 (1973).

**DISCUSSION**

Petitioner asserts that Respondents' intention to revoke his OSUP, take him into custody, and remove him from the United States violates his Fifth Amendment due process rights and the Administrative Procedure Act ("APA").

Petitioner asks that the Court declare "that removing or detaining Petitioner without an individualized determination, and before the Board adjudicates his pending Motion to Reopen would violate the Due Process Clause of the Fifth

Amendment" and the APA. Pet. Prayer for Relief ¶¶ 3-4. Petitioner also asks that the Court issue a Writ of Habeas Corpus "or a preliminary and permanent injunction, prohibiting Respondents from removing Petitioner from the United States, or detaining him, until the Board of Immigration Appeals adjudicates Petitioner's pending Motion to Reopen." *Id.* ¶¶ 4-5.

In his Reply brief, Petitioner shifts focus from these requests for relief and argues instead that the process afforded by the regulations for the revocation of an OSUP is insufficient under the Due Process Clause of the Fifth Amendment. Pet. Reply at 9-12. This is not a claim raised in the Petition, however.

## I. Jurisdiction

Before considering a matter on the merits, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Respondents argue that the Court lacks jurisdiction to consider the Petition, citing 8 U.S.C. § 1252(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court has interpreted § 1252(g)'s jurisdiction-stripping provision narrowly, limiting it to only "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-*

*Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against interpreting § 1252(g) with "uncritical literalism" to sweep in any claim that can technically be said to "arise from" these three actions. *Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018).

Section 1252(g) is directed against "a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Courts have "distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp.3d. 137, 152 (W.D.N.Y. May 2, 2025).

However, the Ninth Circuit has addressed a situation substantially similar to the present case in *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022). In *Rauda*, as in the present case, the petitioner was ordered removed from the United States by an IJ and unsuccessfully appealed that decision. *Id.* at 776. As here, the petitioner filed a motion to reopen his case with the BIA, asserting new developments in his home country. *Id.* The petitioner then filed a habeas petition and requested injunctive relief to prevent his removal from the United States, asserting "that deportation prior to a ruling on his motion to reopen would violate his due process rights, the Convention Against Torture, and the Immigration & Nationality Act." *Id.* at 775-76.

The district court denied the motion, finding that the jurisdictional limits of § 1252(g) barred the petitioner's claims. *Id.* at 776.

The Ninth Circuit affirmed, finding that the petitioner sought to enjoin the execution of his removal order, which Congress had explicitly precluded in § 1252(g). *Id.* at 777. More to the point, the Ninth Circuit held that the Due Process Clause does not require that a non-citizen be exempted from removal because he has filed a motion to reopen, because he will still receive the required process post-removal:

> Our immigration laws allow [a noncitizen] to challenge an order of removal before it's executed and—as [the petitioner] did here—request a stay of removal during judicial proceedings reviewing the agency's removal decision. But once the removal order has withstood challenges before the IJ, the BIA, *and* [the Ninth Circuit], the government has discretion to decide *when* to remove [a noncitizen] from a place he has no legal right to remain. And although the [noncitizen] is entitled to file a motion to reopen and seek a stay of removal from the agency until that motion is decided, our court lacks jurisdiction to intervene if the stay is denied, precisely because [a noncitizen's] presence in the United States is not required for adjudication of the motion to reopen to take place. This statutorily provided process satisfies any demands of the Due Process Clause when [a noncitizen] subject to a valid, final order of removal seeks to reopen his removal proceedings.

*Rauda*, 55 F.4th at 780-81 (internal citations omitted).

Respondents' decision about when to execute Petitioner's valid removal order is a discretionary decision shielded from judicial review by § 1252(g) because "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it." *Rauda*, 55 F.4th at 777 (internal quotation marks and citation omitted) ; *Ibarra-Perez v. United States*, 154 F.4th 989, 999 (9th Cir. 2025) (clarifying the scope of the *Rauda* decision); *see also Saelee v. Hernandez*, Case No. 2:26-cv-00735-TL, 2026 WL 1045223, at *4 (W.D. Wash. April 17, 2026) (denying a habeas

petition where the petitioners sought to prevent their detention and removal pursuant to a valid removal order while they pursued a motion to reopen, citing *Rauda*); *Aleman v. Bondi*, CASE NO. 2:25-cv-92346-JNW, 2026 WL 102457, at *3 (W.D. Wash. Jan. 14, 2026) (concluding that the court lacked jurisdiction to consider a challenge to the execution of a removal order pursuant to *Rauda*); *O.S.S. v. Hernandez*, 3:26-cv-00796-IM (D. Or. April 27, 2026) (finding that the court lacked jurisdiction to consider the petitioner's request to block his removal to his country of origin pursuant to an order of removal, citing 8 U.S.C. § 1252(g) and *Rauda*).

Petitioner seeks to distinguish *Rauda* because the petitioner in that case "sought to enjoin the government from removing him until the BIA rules on his motion to reopen and argued that 'deportation prior to a ruling on his motion to reopen would violate his due process rights' because the motion to reopen procedures failed to guarantee judicial review of 'new developments.'" Pl. Reply at 8. Petitioner assets that his claims are "different in kind" from those in *Rauda*, but they are not. The plain language of the Petition asserts that Respondents are violating Petitioner's due process rights by seeking to remove him during the pendency of his motion to reopen and seeks an order enjoining removal until that motion is resolved by the BIA. Pet. ¶¶ 41-45, 50-53, Prayer for Relief ¶¶ 3-5. This is the very claim and the very relief barred by *Rauda*. *See also Ibarra-Perez*, 154 F.4th at 997 (a claim challenging *where* a petitioner was to be deported was allowed, where a claim concerning ICE's "discretionary authority to decide 'when' and 'whether' to execute a removal order," or a claim "that ICE should have delayed his removal or exercised its discretion not

to remove him" were not permitted under § 1252(g)). Perhaps in recognition of this fact, Petitioner attempts to reframe his claims in the Reply, but that cannot change what the Petition itself alleges or the relief it seeks.

Consistent with *Rauda*, this Court lacks jurisdiction under § 1252(g) to consider Petitioner's challenge to the execution of his removal order or to grant the requested injunctive relief against the execution of the removal order.

**II. APA**

Count Two of the Petition asserts that Petitioner's detention and removal would be arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A), because it involves a decision to detain or remove Petitioner without an individualized consideration of his case. Petitioner argues that Respondents have failed to consider his compliance with requirements, his lack of criminal history, and his colorable motion to reopen his dismissed appeal.

This is, in essence, another challenge to the adequacy of the process afforded to Petitioner and, at least in part, a prohibited challenge to Respondents' discretionary authority to decide "when" and "whether" to deport him. *Rauda*, 55 F.4th at 777. This is made explicit by Petitioner's Prayer for Relief, which seeks a prohibition on Petitioner's removal from the United States or his detention "until the Board of Immigration Appeals adjudicates Petitioner's pending Motion to Reopen." Pet. Prayer for Relief ¶ 5. Like the claims brought directly under the Due Process Clause, this is beyond the Court's subject matter jurisdiction for the same reasons as in *Rauda*.

To the extent that Petition challenges the procedural sufficiency of Petitioner's potential detention or the revocation of his OSUP under the APA, as opposed to his removal, the Court will address that issue in the following section.

**III. Due Process**

As noted, the Court lacks jurisdiction to consider the challenge to Petitioner's removal, but it does have jurisdiction to consider a challenge to his detention and, within that context, a challenge to the revocation of his OSUP. Because both the Fifth Amendment claim and the APA claim concern the provision of due process, the Court will begin with an examination of the process required by the regulations. Additionally, Petitioner shifts focus in his Reply brief, arguing that due process requires that he be provided with a pre-deprivation hearing before he can be detained or removed. Reply at 9-12. This is not a claim advanced in the Petition. Nevertheless, the Court has considered it.

ICE may revoke a noncitizen's release and return the noncitizen to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). A noncitizen whose release have been revoked is to be notified of the reasons for the revocation of his release "upon revocation of his or her release," and is to be provided with an initial informal interview "promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The noncitizen is afforded the opportunity to

"submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future[.]" *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

In his Reply, Petitioner leans heavily on this Court's decision in *M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267 (D. Or. Aug. 21, 2025), but the facts of that case are materially distinguishable from the present case. In *M.S.L.*, the petitioner had been taken into custody following the purported revocation of her OSUP, but ICE failed to adhere to any of the required procedures for doing so. Indeed, *M.S.L.* involved a cavalcade of procedural failures and irregularities on the part of the respondents: the OSUP had not been revoked by an official authorized to do so, *id.* at *9-10; the documentation initially provided to the petitioner was not in a language she understood and contained information that the respondents admitted was inaccurate, *id.* at *10; she did not receive the required informal interview upon her return to custody, *id.* at *11; a revised revocation notice was not provided to the petitioner until she had been in custody for nearly a month, *id.*; and the informal interview, which provided her with an opportunity to contest the reasons for the revocation, was not provided to her until the eve of the hearing on her habeas petition, nearly a month after she was taken into custody. *Id.* The Court also noted that the declarations and the briefing offered by the respondents in *M.S.L.* contained provable falsehoods. *Id.* at *7-8, 14.

The present case contains no such factors. It is not clear that Petitioner's OSUP has been revoked and Petitioner has not been taken into physical custody so many of the procedural safeguards, such as the informal interview in 8 C.F.R. § 241.13(i)(3), are not yet due to him.[3] Petitioner speculates that those procedural protections will not be afforded to him, but such speculation is insufficient to sustain the Petition. *M.S.L.* is inapposite.[4]

Turning to Petitioner's argument that he should be afforded pre-deprivation process, courts in the Ninth Circuit have considered procedural due process claims like Petitioner's under *Matthews v. Eldridge*, 424 U.S. 319 (1976). *Ramirez Tesara v. Wamsley*, 800 F. Supp.3d 1130, 1135 (W.D. Wash. 2025). *Matthews* requires courts to consider three factors when determining whether a government action complies with procedural due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.

Considering the first factor, freedom from government custody, detention, or other forms of physical restraint "lies at the heart of the liberty" protected by the

[3] Respondents' Declaration indicates that the OSUP has not been revoked, Resp. Decl. ¶ 13, and Petitioner has not offered a declaration of his own or any other evidence.

[4] Petitioner also cites to *Arenado-Borges v. Bondi*, CASE NO. 2:25-cv-02193-NW, 2025 WL 3687518, at *6-7 (W.D. Wash. Dec. 19, 2025), but that case is likewise inapposite, as it concerns due process protections for a petitioner who was going to be removed to a third country, an issue that is not implicated in the present case.

Fifth Amendment Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). However, a noncitizen's private interests will be "diminished by the fact that he is subject to an order of removal from the United States." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022); *see also Saechao v. Scott*, Case No. 2:26-cv-00548-TMC, 2026 WL 626765, at *4 (noting that "a noncitizen's liberty interest in remaining in the community is reduced when they are subject to a final, executable order of removal.").

Here, while Petitioner certainly has an interest in remaining out of detention, that interest is diminished by the fact that he has, for some years, been living under a valid and final order of removal and Respondents are apparently prepared to execute it. Resp. Decl. ¶¶ 8, 12. The Court concludes that the first factor weighs against Petitioner.

The second *Matthews* factor considers the risk of erroneous deprivation of Petitioner's interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. However, "the Due Process Clause does not mandate procedures that reduce the risk of erroneous deprivation to zero, a result that is beyond grasp." *Rodriguez Diaz*, 53 F.4th at 1213.

Here, Petitioner has already gone through the immigration courts and the BIA and is subject to an order of removal. Petitioner is entitled to additional process, including as set forth in 8 C.F.R. § 241.13(i)(3), and Respondents affirm that Petitioner will receive those protections. Resp. Decl. ¶ 13. Petitioner's motion to reopen and his motion to stay removal remain pending before the BIA and he will

continue to receive the process associated with those motions. In *Saechao*, the district court concluded that, in a case involving a petitioner with a final removal order and "strong evidence of imminent removal," the second *Matthews* factor did not compel pre-deprivation notice and hearing. *Saechao*, 2026 WL 626765, at *4. The Court finds this reasoning persuasive and likewise concludes that the second factor favors Respondents.

The final factor concerns the government's interests. The government has a well-established interest in the enforcement of immigration laws. *Rogriguez Diaz*, 53 F.4th at 1208 ("Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function," and courts "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." (internal quotation marks and citation omitted)). "The government 'has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal.'" *Saechao*, 2026 WL 626765, at *5 (quoting *Saelee v. Bondi*, No. 2:25-CV-02677-TLF, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026)). The Court concludes that the third factor likewise weighs in favor of Respondents.

In sum, the Court concludes that Petitioner's argument, presented for the first time in the Reply brief, that a pre-deprivation hearing is necessary before he can be detained and removed pursuant to his existing order of removal is insufficient to sustain the Petition. The Petition is DENIED.

**CONCLUSION**

The Court concludes that it lacks jurisdiction to consider Petitioner's challenge to the execution of his removal order. On the merits of Petitioner's due process and APA claims, the Petition is DENIED for the reasons set forth above and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___26th____ day of August 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge